Milligan, J.,
delivered the opinion of the court:
The claimant was arrested in December, 1862, and thrown into the old Capitol prison, in Washington, D. C., and there detained until the 29th of April, 1863, when he was discharged on his friend, James P. Gregory, paying to one Turner, judge-advocate, the sum of $1,500.
The money paid by Gregory was obtained by him from Clement Hughs, and wheu it was paid over to the judge-advocate, he executed and delivered to Gregory the following, receipt.
.“Washington, April 29,1863.
• “ Received of James P. Gregory, for John Hill, fifteen hundred dollars, being money fraudulently obtained from the Government by said Hill.
’ “L. TURNER,

u Judge-Advocate.”

This money ($1,500) was subsequently paid into the Treasury by the Inspector-General, James A. Hardie, with “ other sums received from fraudulent contractors in the old Capitol prison, bribes,” &c.
And this suit is now brought to recover the money so paid to the United States, on the ground that it was paid under duress by imprisonment.
The record is exceedingly barren in its circumstantial as well as its essential facts, and we would be perplexed to know how to dispose of the case were it not for the sworn statement made by the claimant himself while in prison.
• This statement bears date January 30,1863, and seems to have been made with the view of ascertaining what was necessary for the claimant to do in order to secure his release from confinement. It appears to have been voluntarily made, and in it he undertakes to purge himself from all offenses he had committed while acting in the capacity of an Army contractor.
Among other things, by no means creditable, he admits that he had a contract with Colonel Ingalls to deliver 1,000 *182 tons of bay at $25 per ton, and 50,000 bushels of oats at 54 cents per bushel, which he procured a Mr. White, of Baltimore, to fill. After he had made the arrangement with White to furnish'the oats, he informed the claimant that he was then filling a contract for a Mr. Moore, and “ that he was adding 15 per cent, to the weights on the bills of lading, as he understood the Government did not weigh the grain upon the Peninsula, and that he would do the same with my contract, and give me one-third of that per cent.”
The claimant further adds: “ He commenced to ship the oats, and I went to the Peninsula to receive and deliver them, and when two or three cargoes had been delivered, I made out the account as per the bills of lading sent to me by White, and collected the draft on the Treasury from Colonel Ingalls for the same.” Admitting that the claimant was a contractor in the Army at the time of his arrest, he was, under the sixteenth section of the Act June 2, 1862, (12 Stat. L., p. 411,) subject to the rules and regulations for. the government of the land forces, and liable to be arrested and tried by a court-martial for “ fraud or willful neglect of duty.”
The claimant solemnly admits his fraud, but claims that that admission was made under duress, and cannot therefore be received as evidence against him.
In answer to this position, it may be admitted, if a person be under an arrest for improper purposes, without a just cause, or where there is an arrest for a just cause, but without lawful authority, he may be considered as under duress. But “ the general rule is,” says Chancellor Kent, (2 Kent’s Com., p. 574,) “ that either the imprisonment or the duress must be tortious and without lawful authority', or by an abuse of the lawful authority to arrest, to constitute duress by imprisonment.”
It follows from this rule, if the claimant’s imprisonment was tortious and without authority of law, or if the authority existed and was abused in his arrest, he was under duress by imprisonment when he made the confession, and it cannot be received in evidence against him. But, on the other hand, if he was lawfully arrested, and there was no abuse of lawful authority in the act itself, his confession was made without duress, and may’be received against him.
*183 The right as well as the duty of the Government to interpose and arrest the fraudulent execution of contracts made under its authority are no longer open questions in this court.
The Supreme Court, in Adams’ Case, (7 C. Cls. R., p. 58,) in discussing this question in'connection with the power of the Secretary of War, as head of the War Department, says: “And whether he (the Secretary) makes the contracts himself, or confers the authority upon others, it is his duty to see that they are properly and faithfully executed, and if he becomes satisfied that contracts which he has made himself are being fraudulently executed, or those made by others were made in disregard of the rights of the Government, or with the intent to defraud it, or are being unfaithfully executed, it is his duty to interpose, arrest the execution, and adopt effectual measures to protect the Government against the dishonesty of subordinates.”
The authority of the Government to arrest and imprison the claimant as an Army contractor being conferred by statute and sanctioned by the Supreme Court, there is nothing in this record which tends to show that that authority was abused in the arrest complained of. On the contrary, the claimant, having solemnly admitted his own fraud without duress by imprisonment, his statements became evidence before us, and, as such, makes it the duty of the Government to protect itself against the dishonesty of the claimant.
The cause of the arrest, from all that appears in this record, was not a crime that could not be- compromised without implicating the officers engaged in it, but an offense cognizable before a court-martial, and the claimant, through his friend, having re-imbursed the Government, in the judgment of the judge-advocate, was discharged. Whether the judge-advocate did his duty or not in this respect, it is very clear the claimant, after accepting the benefits of the.compromise, cannot now complain of it, or maintain this suit to recover the money paid for his release.
The petition is dismissed.